■ In the Matter of the Claim of GREGORY W. COLLINS, Claimant, v DUKES PLUMBING AND SEWER SERVICE, INC., et al., Appellants, et al., Respondent. WORKERS' COMPENSATION BOARD, Respondent. (Claim No. 1.) In the Matter of the Claim of ANGELA ANN EARLE, Claimant, v BATAVIA NURSING HOME et al., Appellants, et al., Respondent. WORKERS' COMPENSATION BOARD, Respondent. (Claim No. 2.) In the Matter of the Claim of RANDY RAYNOR, Claimant, v LANDMARK CHRYSLER et al., Appellants, et al., Respondent. WORKERS' COMPENSATION BOARD, Respondent. (Claim No. 3.) [904 NYS2d 537]—

Rose, J.P. Appeals from three decisions of the Workers'

Compensation Board, filed May 6, 2009, May 7, 2009 and May 22, 2009, which, among other things, directed each of the employers' workers' compensation carriers to make a deposit into the aggregate trust fund pursuant to Workers' Compensation Law § 27 (2).

Among the many amendments made to the Workers' Compensation Law in 2007, a provision was added to Workers' Compensation Law § 15 (3) (w) capping the number of weeks for which a claimant could receive that subdivision's nonschedule permanent partial disability (hereinafter PPD) benefits (see L 2007, ch 6, §§ 4, 82 [a]). This new cap on benefits only applies to accidents occurring after March 31, 2007, the effective date of the amendment. In each of the cases here, each claimant's injury was classified as a PPD and each claimant was awarded benefits under section 15 (3) (w). These PPD awards, however, were not capped because claimants' injuries all preceded the amendment's effective date.

Workers' Compensation Law § 27 (2) was also amended in 2007 to require that any PPD award under Workers' Compensation Law § 15 (3) (w) made on or after July 1, 2007 must be paid into the aggregate trust fund (hereinafter the ATF) (see L 2007, ch 6, § 46). Because each of the uncapped PPD awards here was made after July 1, 2007, the private insurance carriers for claimants' employers were ordered to make a lump-sum payment of the present value of the awards into the ATF pursuant to the amendment to section 27 (2).

Arguing that the amendment to Workers' Compensation Law § 27 (2) mandating a lump-sum payment into the ATF was improperly applied retroactively to claimants' injuries because those injuries were sustained before the amendment's effective date, the carriers sought review by the full Workers' Compensation Board. The carriers also argued that mandating lump-sum payment of claimants' uncapped PPD awards is improper because the actual amounts of their future benefits are unpredictable and there is no reliable way to calculate their present values. Two of the carriers also challenged the constitutionality of the amendment. After applying the presumption of constitutionality, the full Board found the language of section 27 (2) as amended to be unambiguous and to evince a clear intent to require payment into the ATF of all Workers' Compensation Law § 15 (3) (w) awards made after July 1, 2007 regardless of the date of injury. The employers and their private insurance carriers (hereinafter collectively referred to as carriers) appeal.

Initially, we do not view these cases as presenting an issue of the retroactive application of the amendment to Workers'

Compensation Law § 27 (2), for "[a] statute is not retroactive . . . because such transactions relate to and are founded upon antecedent events" (McKinney's Cons Laws of NY, Book 1, Statutes § 51, Comment, at 87). Rather, because the newly mandated lump-sum payments into the ATF expressly apply to PPD awards made on or after July 1, 2007, a date after the amendment was enacted, we view the carriers' contention to be that the Legislature intended to make the prospective application of the amendment to section 27 (2) dependent upon whether the PPD award is capped pursuant to the amendment to Workers' Compensation Law § 15 (3) (w). Regardless of how this contention is characterized, however, it is contradicted by the express language of the amendment to section 27 (2).

"As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Matter of Turdo v Dellicato Vineyards,* 73 AD3d 143, 145-146 [2010]; *Matter of Giello v Providence Fire Dist.*, 57 AD3d 1294, 1296 [2008]). Here, the plain language of the statutes and the legislative history of their amendments persuades us that the inclusion of a reference to Workers' Compensation Law § 15 (3) (w) in Workers' Compensation Law § 27 (2) was intended to expand the types of awards to which the latter's mandatory payment provision applies rather than to restrict it to awards that are capped by the amendment to section 15 (3) (w). Section 27 (2) expressly mandates payment into the ATF of "*any* such award made [under section 15 (3) (w)] on or after July first, two thousand seven" (emphasis added). "[T]he word 'any' has an expansive meaning" and should be broadly construed (*United States v Gonzales,* 520 US 1, 5 [1997]; *see State of New York v Philip Morris Inc.*, 8 NY3d 574, 580 [2007]). Since section 15 (3) (w) existed prior to the amendments, the reference in section 27 (2) to section 15 (3) (w) cannot be read to apply only to capped awards. Rather, the reference serves to add all section 15 (3) (w) PPD awards, whether they are capped or uncapped, to the other types of PPD awards for which payment into the ATF already was mandated by former section 27 (2). Moreover, nothing in the legislative history supports the carriers' claim that, despite the amendment's silence as to the date of injury, the Legislature intended to limit its new payment mandate to capped PPD awards alone.

Nor do the principles of statutory construction permit us to imply the limitation suggested by the carriers. Where, as here, "a statute describes the particular situations in which it is to

apply and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (*Matter of Alonzo M. v New York City Dept. of Probation*, 72 NY2d 662, 665 [1988] [internal quotation marks and citations omitted]; *see Matter of Connor v Deer Park Union Free School Dist.*, 195 AD2d 216, 220 [1994]; McKinney's Cons Laws of NY, Book 1, Statutes § 74). Inasmuch as the Legislature has directed that the relevant date for the application of the amendment to Workers' Compensation Law § 27 (2) is the date of the award and not the date of the accident, the Board properly applied its mandate prospectively to the awards made here.

The carriers also advance a number of arguments contending that it is unfair to require them to pay the present value of the PPD award into the ATF unless the award is capped by the amendment to Workers' Compensation Law § 15 (3) (w). Given the plain language of the amendment to Workers' Compensation Law § 27 (2), however, the Legislature has expressed its clear intent to mandate the payment of present value despite the possibility of future decreases or increases in claimants' entitlements. The carriers' claim that this policy choice by the Legislature produces unfair results is better addressed to that body (*see Joblon v Solow*, 91 NY2d 457, 465 n 2 [1998]; *Matter of Mace v Owl Wire & Cable Co.*, 284 AD2d 672, 675 [2001]).

As for the carriers' contention that the Board's computation of the present value of each claimant's award is speculative or arbitrary and capricious because the actuarial tables used cannot accurately predict the amount or duration of an uncapped award, the Legislature has mandated that the present values of claimants' awards be computed using those tables (*see* Workers' Compensation Law § 27 [5]), and the carriers do not claim any inability to perform that calculation. While the future benefits to which claimants will be entitled may increase or decrease depending on a number of variables, those variables are omitted from the calculation by the Legislature's policy decision to use present value. Here, unlike the situation in *Burns v Varriale* (9 NY3d 207 [2007]) or *Matter of Pettinelli v Degnon Contr. Co.* (218 App Div 7 [1926]), the Board has no discretion. Rather, it has a legislative mandate to compute the present values of claimants' awards. Having complied with the statute's directive, the Board's computations cannot be said to be arbitrary or capricious (*see Matter of Baust v Levitt*, 50 AD2d 627, 628 [1975], *lv denied* 38 NY2d 708 [1976]).

As for the constitutional arguments made by two of the carriers, we are not persuaded that the Board's application of

amended Workers' Compensation Law § 27 (2) violates the Takings Clause of the Fifth Amendment of the US Constitution. To determine whether there has been a compensable taking of private property for public use, we weigh the economic impact of the challenged statute on the carriers, the extent to which it has interfered with their distinct investment-backed expectations and the character of the governmental action involved (*see Connolly v Pension Benefit Guaranty Corporation*, 475 US 211, 225 [1986]). Here, the carriers do not claim that the amendment has increased the amount of compensation owed to claimants, and they offer no evidence of an unexpected additional expense other than administration fees, "a necessary consequence of the . . . regulatory scheme" (*id.* at 226). "A taking may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good" (*Penn Central Transp. Co. v New York City*, 438 US 104, 124 [1978] [citation omitted]). Given the Board's description of the goals of the amendment to Workers' Compensation Law § 27 (2) as protecting the integrity of funds for the payment of long-term benefits and creating an incentive for offering timely and reasonable settlements to injured workers, the amendment clearly falls into the latter category.

The carriers' argument that the amendment violates the Contract Clause of US Constitution, article I, § 10 also is unpersuasive because their existing insurance contracts already had to account for the possibility of a discretionary direction to pay awards into the ATF (*see* Workers' Compensation Law § 27 [2]; § 54 [4]). Even if the carriers had demonstrated that the Board's directive impaired a contractual relationship, we would uphold it because "it is reasonable and necessary to accomplish a legitimate public purpose" (*Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39, 46 [1992]; *see Methodist Hosp. of Brooklyn v State Ins. Fund*, 102 AD2d 367, 381-382 [1984], *affd* 64 NY2d 365 [1985]).

We are similarly unpersuaded that Workers' Compensation Law § 27 (2) violates the carriers' equal protection rights under the 14th Amendment of the US Constitution. The carriers concede that a rational basis is all that is required in assessing whether the statute's application is properly limited to private carriers, and not to self-insurers and the State Insurance Fund (*see generally Elmwood-Utica Houses v Buffalo Sewer Auth.*, 65 NY2d 489, 495-496 [1985]). As the Board has noted, one purpose

of directing payments into the ATF is to assure that injured workers will continue to receive benefits even if the private carrier becomes unable to pay. Because the same goal is achieved for the State Insurance Fund by virtue of its status as a state agency (*see Methodist Hosp. of Brooklyn v State Ins. Fund*, 102 AD2d at 374), and for self-insurers by the provision of other safeguards against insolvency (*see* 12 NYCRR 315.2-315.4), we discern a rational basis for limiting the statute's mandate to private carriers.

To the extent that the carriers also contend that the mandatory deposit violates their substantive due process rights, they have not demonstrated that they were deprived of a protected property interest and "that the governmental action was wholly without legal justification" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]). Nor have they shown that they were deprived of procedural due process by the ability of the ATF to negotiate a settlement with a claimant for less than the full amount of their payment into the ATF. The statutes provide the carriers with the opportunity to avoid payment into the ATF entirely by giving them the right and the obligation to negotiate their own settlement agreement with a claimant (*see* Workers' Compensation Law § 32).

Lahtinen, Stein, Garry and Egan Jr., JJ., concur. Ordered that the decisions are affirmed, without costs.